# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**LYDIA MCCOY**                                              **CIVIL ACTION**

**VERSUS**                                                  **NO. 22-443-BAJ-RLB**

**LORRAINE MCCORMICK, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on February 15, 2023.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**LYDIA MCCOY**                                    **CIVIL ACTION**

**VERSUS**                                         **NO. 22-443-BAJ-RLB**

**LORRAINE MCCORMICK, ET AL.**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Plaintiff's Motion for Declaratory Relief and Preliminary Injunction (R. Doc. 42). The motion is opposed. (R. Docs. 82, 83).

Also before the Court are Gina Lee's Motion to Dismiss (R. Doc. 58); Judge Steven Tureau's Second Motion to Dismiss (R. Doc. 66); the Louisiana Court of Appeal's Motion to Dismiss (R. Doc. 73), and Bridget Hanna, Jill Lambert, and June Julien's Motion to Dismiss (R. Doc. 75). Plaintiff filed an untimely response memorandum addressing these motions. (R. Doc. 98). The defendants filed reply memoranda. (R. Docs. 100, 101).

Also before the Court are David Conachen's Motion to Set Aside Entry of Default (R. Doc. 91) and Motion for Extension of Time to File Responsive Pleadings (R. Doc. 92). The motions are opposed. (R. Doc. 96).

Also before the Court is David Conachen's Motion to Dismiss for Insufficient Service of Process (R. Doc. 99). The deadline for filing an opposition has expired. LR 7(f).

Also before the Court is Plaintiff's Motion for Entry of Default against Scott McCormick, Lorraine McCormick, and Joseph McCoy. (R. Doc. 94). The deadline for filing an opposition has expired. LR 7(f).

## I.    Background

### A.    Procedural History

On January 28, 2022, Lydia McCoy ("Plaintiff"), who is proceeding *pro se*, filed this civil rights action in the U.S. District Court for the District of Oregon against several individual Louisiana residents: Lorraine McCormick ("L. McCormick"); Judge Steven Tureau ("Judge Tureau"); Jill Lambert ("Lambert"); June Julien ("Julien"); Bridget Hanna ("Hanna"); Scott McCormick ("S. McCormick"); Joseph McCoy ("J. McCoy"); and David Conachen ("Conachen"). Plaintiff then filed an Amended Complaint naming the following as additional defendants: Michele Robicheaux ("Robicheaux"); Gina Lee ("Lee"); the Louisiana Court of Appeal for the First Circuit ("First Circuit"); the Louisiana Supreme Court; and the fictitious entities Does 1 through 20 (collectively, "Does"). (R. Doc. 18, "Am. Compl."). Plaintiff alleges that these defendants violated federal and state law in connection with a divorce proceeding in Louisiana state court.

On July 5, 2022, the action was transferred to the U.S. District Court for the Middle District of Louisiana pursuant to 28 U.S.C. § 1406(a). (R. Doc. 52).

At the time of transfer, the following motions remained pending: S. McCormick, L. McCormick, and J. McCoy's Motion to Dismiss (R. Doc. 29); Judge Tureau's Motion to Dismiss (R. Doc. 30); Plaintiff's Motion to Extend Time to Serve Defendants (R. Doc. 32); Plaintiff's Motion to Strike Defendants' Motion to Dismiss ECF 29 (R. Doc. 33); Lambert, Julien, and Hanna's Motion to Dismiss (R. Doc. 35); Plaintiff's Motion to Extend Time to File Opposition to ECF 29 (R. Doc. 36); Plaintiff's Motion to Strike Defendants' Motion to Dismiss ECF 30 (R. Doc. 37); Plaintiff's Motion to Extend Time to File Opposition to ECF 30 (R. Doc. 38); Plaintiff's Motion for Declaratory Relief and Preliminary Injunction (R. Doc. 42); and Lee's Motion for Extension of Time to File Responsive Pleadings (R. Doc. 54).

After transfer, the Court denied the defendants' motions to dismiss without prejudice to refile to the extent any arguments had not been made moot by the transfer of this action, and provided Plaintiff with additional time to serve the remaining defendants. (R. Doc. 61). By denying the pending motions to dismiss, the Court narrowed the issues to be presented, and effectively provided Plaintiff with an extension of her deadlines to oppose the dispositive relief sought by the defendants. Given that the deadline to oppose Plaintiff's Motion for Declaratory Relief and Preliminary Injunction (R. Doc. 42) was stayed prior to removal, the Court set a deadline for the defendants to file any opposition to that motion. (R. Doc. 72).

Four motions to dismiss address the merits of Plaintiff's claims: Lee's Motion to Dismiss (R. Doc. 58); Judge Tureau's Motion to Dismiss (R. Doc. 66); the First Circuit's Motion to Dismiss (R. Doc. 73), and Hanna, Lambert, and Julien's Motion to Dismiss (R. Doc. 75). The Court has stayed discovery given the immunity defenses raised by the defendants. (R. Doc. 80).

Plaintiff moved for entry of default as to Conachen. (R. Doc. 86). The Clerk entered default given that Conachen had not made an appearance. (R. Doc. 89). Conachen has since filed Motion to Set Aside Default (R. Doc. 91); Motion for Extension of Time to File Answer (R. Doc. 92); and Motion to Dismiss for Insufficient Service of Process (R. Doc. 99).

Plaintiff also moved for entry of default as to S. McCormick, L. McCormick, and J. McCoy. (R. Doc. 87). The Clerk denied entry of default given that these defendants had filed a motion to dismiss prior to transfer. (R. Doc. 90). Plaintiff has again moved for Entry of Default as to S. McCormick, L. McCormick, and J. McCoy. (R. Doc. 94).

### B.    Nature of Plaintiff's Claims

Plaintiff's allegations arise out of divorce proceedings between Plaintiff and J. McCoy brought in the 23rd Judicial District Court in Gonzales, Louisiana. Plaintiff alleges that all of the named "Defendants have corruptly engaged in a pattern of simulation of the court proceedings,

record falsification, racketeering, dishonesty, and deception to deprive Plaintiff of her constitutional rights because of her national and ethnic origin, nationality, and gender." (Am. Compl. ¶ 51). Plaintiff seeks recovery under various federal statutes (18 U.S.C. § 1962(b), (c), (d);[1] 42 U.S.C. § 1983; 42 U.S.C. § 1985; and 15 U.S.C. § 1125(a)(1)(A)) and state law (intentional and/or negligent infliction of emotional distress; ORS 165.080; and ORS 165.100). (Am. Compl. ¶¶ 54-102). Plaintiff prays for compensatory damages, an award of expenses, attorney's fees, as well as declaratory and injunctive relief. (Am. Compl., Request for Relief, at 30-33). Plaintiff specifically alleges that she is suing the defendants "in their individual capacities." (Am. Compl. ¶ 4).

Plaintiff alleges that Conachen, her attorney at the divorce proceedings,[2] conspired with J. McCoy and his counsel at the divorce proceedings, S. McCormick and L. McCormick (collectively, the "McCormicks"), "by not using evidence that Plaintiff provided, not calling [L. McCormick] out on its fraud, falsification of evidence, and insults of Plaintiff." (Am. Compl. ¶ 10). Plaintiff alleges that the McCormicks hired a "corrupt" expert to submit a lower than fair market valuation of the McCoys' home; the "corrupt" Judge Pro Tempore Jerome Barbera then denied Plaintiff's motion to compel discovery; and the "corrupt" Judge Pro Tempore Jerome Emile St. Pierre excluded the foregoing common property from the proceedings altogether and held a trial on the merits during a 15-minute Zoom meeting. (Am. Compl. ¶¶ 12-23).[3] Plaintiff alleges that the McCormicks falsely promised to "settle" the claims by "repeatedly" trying "to trick" her with "the dirty scheme of stealing the plaintiff's funds." (Am. Compl. ¶ 30). Plaintiff also alleges that the J. McCoy and the McCormicks "corruptly gave bribes and other forms of

---

[1] This claim is brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968.
[2] Conacharen represents that his attorney-client relationship with McCoy ended on or around December 21, 2015. (R. Doc. 91-2 at 2).
[3] Plaintiff attached a copy of the trial transcript, held by Zoom, on December 2, 2020, as an attachment to her Motion for Declaratory Relief and Preliminary Injunction. (R. Doc. 42-14).

recompenses to the corrupt 'public officials' for criminal violating the law and 'allowing' McCoy to 'save' a large sum of money by stealing it from Plaintiff." (Am. Compl. ¶ 61).

Plaintiff further alleges that Hanna, Julien, Lambart, and Robicheaux (collectively, the "Clerk-Defendants")[4] failed to properly mail the final judgment to Plaintiff's address in Oregon. (Am. Compl. ¶ 24). Plaintiff asserts that the "clerks Hanna, Julien, and Robicheaux returned the notice of appeal unfiled" because Plaintiff had not paid the associated filing fee and there was a dispute between herself and the Clerk's office as to whether her status as a pauper also applied to her appeal of the trial court's decision. (Am. Compl. ¶ 25). Plaintiff also alleges that the Clerk-Defendants sent "extortion attempts" demanding payments and tried to dismiss Plaintiff's appeal as "abandoned." (Am. Compl. ¶¶ 26-28). Notwithstanding Plaintiff's allegations of "fraud, intimidation, threats, [and] claims that are contrary to the existing law and facts in the record," Plaintiff admits "the clerk finally lodged the 'appeal record.'" (Am. Compl. ¶ 29).

Plaintiff also asserts that the Clerk-Defendants improperly prepared a record for appeal that was "shockingly falsified, altered, and tampered with" because twenty exhibits in support of her claims, as well as hearing transcripts, were not included, and certain exhibits "were altered, partially blackened, or unnumbered." (Am. Compl. ¶¶ 31-32). Plaintiff indicates that her motion to complete the record was considered and denied by the trial court. (Am. Compl. ¶¶ 33-35). Plaintiff states that "[t]he falsification of the appeal record could only be done by someone who intimately knows the case and relevant law," which she admits could not have been performed by "[a] filing clerk whose responsibility is to simply scan the documents [and who] would not have knowledge and understanding [of] what documents to remove and alter." (Am. Compl. ¶ 50).

---

[4] Hanna is the Clerk of Court for the 23rd Judicial District Court; Julien, Lambart, and Robicheaux are Deputy Clerks. (R. Doc. 75-1 at 1, 3). Robicheaux, who was added as a defendant in the Amended Complaint, has not made an appearance in this action. Plaintiff has not filed proof of service on Robicheaux or otherwise moved for default with respect to this defendant. (*See* R. Doc. 75-1 at 3 n.1).

Plaintiff alleges that the "corrupt" Lee, a court reporter in the 23rd Judicial District Court, "falsified" all of the divorce proceeding transcripts. (Am. Compl. ¶ 32). Plaintiff also claims that these falsified records, and the Clerk-Defendants' failure to include such transcripts as part of the trial court record, prevented Plaintiff from taking an appeal in the underlying divorce proceeding. (Am. Compl. ¶ 33).

With respect to Judge Tureau, who appears to have taken over the divorce proceedings at some point in 2021, Plaintiff claims that this "cartoonishly corrupt" and "scumbag" judge acted in conspiracy with the Clerk-Defendants, J. McCoy, and the McCormicks by "maliciously" denying the "complete record on appeal," denying "Plaintiff's request to have trial on the merits," manufacturing the $14,000.00 or more in filing fees, and improperly ordering funds to be filed into the registry. (Am. Compl. ¶¶ 35, 36, 37, 40).

Finally, Plaintiff alleges that the First Circuit and Louisiana Supreme Court were involved in the racketeering scheme and are "atrociously corrupt" because the Clerk-Defendants copied them on letters seeking payment of filing fees. (Am. Compl. ¶¶ 26, 27, 37, 40). Plaintiff claims the First Circuit is "run by criminals" because they dismissed her appeals. (Am. Compl. ¶¶ 41-43). Plaintiff asserts that these "[f]raudulent 'dismissals' by those 'courts' are nothing else but their participation in racketeering and crimes, committed under color of law [,]" and the "Louisiana 'courts' are the essential part of the well-oiled criminal machine, run by the corrupt purportedly 'elected' officials." (Am. Compl. ¶ 43). Plaintiff further asserts that the Louisiana Supreme Court wrongfully denied her motions and writs with the single word "denied." (Am. Compl. ¶ 45). Among other things, Plaintiff alleges that "[t]he unconstitutional 'secrecy' of Louisiana courts with no accountability or transparency" has hurt her and "impacted her clearly established constitutional rights." (Am. Compl. ¶ 47).

Plaintiff has alleged that this Court can properly exercise federal question jurisdiction under 28 U.S.C. § 1331, and diversity jurisdiction under 28 U.S.C. § 1332. (Am Compl. ¶ 1).

## II.    Law and Analysis

### A.    Pro Se Litigants

*Pro se* pleadings are to be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (recognizing the established rule that this court "must construe [a *pro se* plaintiff's] allegations and briefs more permissively"). Furthermore, a court must liberally construe a *pro se* complaint, taking all well-pleaded allegations as true. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curia). Nevertheless, "a *pro se* litigant is not exempt . . . from compliance with relevant rules of procedural and substantive law." *NCO Fin. Systems, Inc. v. Harper–Horsley*, No. 07-4247, 2008 WL 2277843, at *3 (E.D. La. May 29, 2008) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981)). As such, a *pro se* plaintiff's complaint "must set forth facts giving rise to a claim on which relief may be granted." *Johnson*, 999 F.2d at 100 (citation omitted).

Additionally, "[a] liberal reading of plaintiff's pleadings is the only special treatment afforded *pro se* plaintiffs by the courts." *Kiper v. Ascension Parish Sch. Bd.*, No. 14-313, 2015 WL 2451998, at *1 (M.D. La. May 21, 2015) (citing *Callahan v. C.I.R.*, No. 99-0295, 2000 WL 1141607, at *1 (M.D. La. Apr. 10, 2000)). A "court is not required to search for or try to create causes of actions or find material issues of fact for *pro se* plaintiffs." *Id.* Finally, a *pro se* litigant is not entitled to greater rights than would be a litigant represented by a lawyer." *NCO Fin. Systems*, 2008 WL 2277843, at *3 (citing *Birl*, 660 F.2d at 593).

**B.    Plaintiff's Motion for Declaratory Relief and Preliminary Injunction (R. Doc. 42)**

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (internal citations and quotations omitted). *See also Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989) (preliminary injunctive relief " is an extraordinary remedy and should be granted only if the movant has clearly carried the burden of persuasion with respect to all four factors"); *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) ("The decision to grant a request for preliminary injunction is to be treated as the exception rather than the rule"). The decision whether to grant or deny a request for a preliminary injunction is within the sound discretion of the Court. *See Allied Mlttg. Grp., Inc.*, 878 F.2d at 809.

At all times, the burden of persuasion remains with the plaintiff as to each of the four elements. Specifically, a plaintiff must establish: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest. *See Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008). If a plaintiff fails to meet his burden regarding any of the necessary elements, the Court need not address the other elements necessary for granting a preliminary injunction. *See Roho, Inc. v. Marquis*, 902 F.2d 356, 261 (5th Cir. 1990) (declining to address the remaining elements necessary to obtain a preliminary injunction after finding that the plaintiff failed to show a substantial likelihood of success on the merits).

In support of her Motion for Declaratory Relief and Preliminary Injunction, Plaintiff claims that "the defendants have formed a racketeering enterprise in order to steal Plaintiff's property, obstruct justice, and persecute Plaintiff because of her nationality, alienage, and

gender." (R. Doc. 42 at 2). Plaintiff further asserts that she has filed the motion "because the criminals, sued herein, formed a racketeering enterprise to obstruct justice and steal, and have stolen all Plaintiff's money and property, and there is absolutely nothing that Plaintiff can do to stop these atrocities except seeking relief in federal court." (R. Doc. 42 at 2). Plaintiff asks the Court to construe her request for declaratory relief as a motion for summary judgment, and issue declaratory relief "against judges and court officials" because they allegedly "violate the law and commit criminal acts under the guise of the purported authority of the law." (R. Doc. 42 at 3-4). Plaintiff also seeks a preliminary injunction issued restraining "defendants from corruptly and criminally falsifying documents, perverting and disregarding the law, stealing from Plaintiff, simulating the court's proceedings, preventing Plaintiff from accessing courts in a meaningful and effective manner, and doing other unlawful activities of the racketeering enterprises that they have formed." (R. Doc. 42 at 4).

To the extent Plaintiff seeks relief pursuant to Rule 56 of the Federal Rules of Civil Procedure, that relief is unavailable. Given that the parties have not conducted any discovery, Plaintiff cannot demonstrate "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "evidence" submitted by Plaintiff in support of her claims for declaratory relief, including her declaration and supporting documents (R. Doc. 43), do not support a finding that there is no genuine dispute as to any material fact with respect to whether the defendants have engaged in a criminal enterprise to violate Plaintiff's constitutional rights and to extort money from her through her divorce proceedings. At any rate, the Court does not construe Plaintiff's motion for declaratory relief, which was filed prior to any discovery, as a motion for summary judgment given that it fails to comply with the Court's Local Rule 56(b) given the absence of a separate statement of material facts.

The Court also concludes that Plaintiff is not entitled to a preliminary injunction. As discussed below, Plaintiff has failed to state a claim upon which relief can be granted. Accordingly, Plaintiff has not established a substantial likelihood of prevailing on the merits.

The Court need not discuss any of the remaining factors given that Plaintiff has not established a substantial likelihood of prevailing on the merits. The Court adds, however, that there is no substantial threat that Plaintiff will suffer irreparable injury if the injunctive relief is not granted. Plaintiff's claims are best characterized as frivolous collateral attacks on a divorce proceeding. There does not appear to be any continuing threat of harm to Plaintiff.

Furthermore, Plaintiff's claimed injury does not outweigh the threatened harm to the defendants, many of whom are integral parts of the state court judicial process. The alleged acts of conspiracy and racketeering are specific to Plaintiff's divorce proceeding. The issuance of a blanket injunction restraining the defendants "from falsifying, alerting, concealing, tampering with any records," "from stealing Plaintiff's property by manufacturing bogus, fraudulent 'bills' or charges,'" and "from obstructing justice, simulating proceedings, perverting the law and the facts, and depriving Plaintiff of her rights, either in full or in part because of her national origin, alienage, and gender" (*see* R. Doc. 42 at 21) would conceivably result in injury to the entire Louisiana state court judicial process. Plaintiff's vague and unsupported allegations basically seek this Court to enjoin the defendants from doing anything Plaintiff disagrees with. This would disserve the public interest by frustrating the continued public service of state court employees and judicial officers.

### C.    Plaintiff's Motion for Entry of Default (R. Doc. 94)[5]

Plaintiff seeks entry of default with respect to S. McCormick, L. McCormick, and J. McCoy. (R. Doc. 94).

---

[5] The electronic docket designates this motion as a Motion for Default Judgment.

Prior to the transfer of this action, S. McCormick, L. McCormick, and J. McCoy filed a Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue. (R. Doc. 29). After transfer of this action, the Court denied this motion without prejudice to refile a renewed motion to dismiss raising any arguments that have not been made moot by the transfer of the action to this district. (R. Doc. 61). S. McCormick, L. McCormick, and J. McCoy have not filed a renewed motion to dismiss since the transfer of this action.

On September 28, 2022, Plaintiff requested the Clerk of Court to enter default in this action with respect to these defendants pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. (R. Doc. 87). The Clerk of Court denied the request in light of the previously filed motion to dismiss. (R. Doc. 90).

Plaintiff renews the request for entry of default, and in doing so, states that "[t]he clerk unlawfully and in assistance to the dirty criminal that ROBBED Plaintiff under the guise of the 'law' failed to enter default to which Plaintiff is entitled as a matter of law." (R. Doc. 94 at 1).

It is unclear why S. McCormick, L. McCormick, and J. McCoy have not filed a renewed motion to dismiss or otherwise answered since the transfer of this action. At any rate, and as discussed more fully below, the Court concludes that Plaintiff has failed to claim against these defendants. Given that Plaintiff's claims against these defendants are subject to dismissal with prejudice based on the Court's frivolous review, the relief sought by the instant Motion for Entry of Default is moot.

### D. Conachen's Motion to Set Aside Entry of Default (R. Doc. 91) and Motion for Extension of Time to File Responsive Pleadings (R. Doc. 92)

As stated above, the Clerk has entered default with respect to Conachen. (R. Doc. 89). Conachen now seeks an order setting aside the Clerk's entry of default and providing him additional time to file a responsive pleading. (R. Docs. 91, 92). Conachen filed these motions within one week of the Clerk's entry of default. In addition, Conachen filed his Motion to

Dismiss for Insufficient Service of Process (R. Doc. 99), which is discussed below, within the time sought by his motion for extension of time to file a responsive pleading.

The service of summons or lawful process triggers the duty to respond to a complaint. *Fagan v. Lawrence Nathan Assocs.,* 967 F. Supp. 2d 784, 795 (E .D. La. 2013) (citing *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 937 (5th Cir. 1999)). Rule 55 provides, in pertinent part, that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Here, Plaintiff moved for entry of default accompanied by a declaration that she personally "mailed the summons and the complaint" to Conachen. (R. Doc. 86; *see* R. Doc. 86-1 at 2). Given this filing, the Clerk of Court issued an entry of default. (R. Doc. 89).

The Court may set aside an entry of default upon a finding of "good cause." Fed. R. Civ. P. 55(c). "The decision to set aside a default decree lies within the sound discretion of the district court." *United States v. One Parcel of Real Property*, 763 F.2d 181, 183 (5th Cir. 1985). The ultimate relief of a default judgment is "generally disfavored in the law and thus should not be granted on the claim, without more, that the defendant had failed to meet a procedural time requirement." *Lacy v. Sitel Corp*., 227 F.3d 290, 292 (5th Cir. 2000) (citations and internal punctuation removed). "To determine whether good cause to set aside a default exists" the court will consider three factors: "whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." *Id*. The Court may also consider whether "the defendant acted expeditiously to correct the default." *Id*.

Here, the Court finds good cause to set aside the entry of default. All relevant factors support this conclusion. First, there is no evidence that the default was willful. Conachen has submitted a declaration stating that he was not aware that Plaintiff's action had been transferred

from Oregon to Louisiana until he received a copy of the Clerk's Entry of Default in this district. (R. Doc. 91-2 at 1). Second, Plaintiff will not be prejudiced by having the default set aside. As discussed further below, because service of process was attempted by Plaintiff herself – as opposed to a non-party as required by Rule 4(c)(2) – the Court concludes that service was improper. Accordingly, Conachen's delayed appearance does not prejudice Plaintiff, who did not properly serve Conachen with process. Third, Conachen has provided a meritorious defense, namely that he was not properly served with process. In addition, the Court has concluded below that Plaintiff's claims brought against Conachen must be dismissed on the merits. Finally, the record supports a finding that Conachen acted expeditiously to correct the default as soon as he received notice of the default.

Having concluded that there is good cause to set aside the entry of default, the Court further concludes that Conachen has demonstrated good cause for an extension of time to file responsive pleadings notwithstanding Plaintiff's objection to the extension. *See* Fed. R. Civ. P. 6(b)(1); LR 7(a). The Court finds it appropriate to extend Conachen's deadline to file responsive pleadings to November 1, 2022 as requested. Accordingly, Conachen's Motion to Dismiss for Insufficient Service of Process (R. Doc. 99) filed on that extended deadline is timely.

**E.    Defendants' Motions to Dismiss (R. Docs. 58, 66, 73, 75, 99)**

**1.    Summary of the Briefing**

Conachen seeks dismissal under Rule 12(b)(5) for insufficient service of process, arguing that Plaintiff failed to effect service as allowed under Rule 4(e)(1). (R. Doc. 99). Plaintiff did not file an opposition to this motion so it is considered unopposed.

Lee seeks dismissal of Plaintiff's claims for the following reasons: (A) Plaintiff has failed to serve Lee; (B) Plaintiff's claims against Lee are barred by quasi-judicial immunity; (C) Lee is entitled to qualified immunity; (D) Plaintiff has failed to state a RICO claim against Lee; (E)

Plaintiff has failed to State a § 1983 claim or § 1985 claim against Lee; (F) Plaintiff's claims are

barred by *Younger* Abstention doctrine; and (G) Plaintiff is not entitled to injunctive relief

against Lee. (R. Doc. 58)

Judge Tureau seeks dismissal of Plaintiff's claims for the following reasons: (A)

Plaintiff's service upon Judge Tureau was improper; (B) Plaintiff's claims against Lee are barred

by absolute judicial immunity; (C) Plaintiff's claims are barred by *Younger* Abstention doctrine;

and (D) Plaintiff is not entitled to injunctive relief against Judge Tureau. (R. Doc. 66).

The First Circuit seeks dismissal of Plaintiff's claims for the following reasons: (A)

Plaintiff's service upon the First Circuit was improper; (B) the First Circuit Lacks Capacity to be

sued; (C) Eleventh Amendment immunity bars Plaintiff's claims against the First Circuit; (D)

Plaintiff's § 1983 claims against the First Circuit are not brought against "persons" under the

meaning of the law; (E) Plaintiff's claims against the First Circuit are barred by absolute judicial

immunity; and (F) Plaintiff is not entitled to injunctive relief against the First Circuit. (R. Doc.

73).

The Clerk-Defendants[6] seek dismissal of Plaintiff's claims for the following reasons: (A)

The Clerk-Defendants are entitled to quasi-judicial immunity; (B) the Clerk-Defendants are

entitled to qualified immunity; (C) Plaintiff has failed to state a RICO claim, § 1983 claim, §

1985 claim, international and/or negligent inflection of emotional distress claim, violation of

Oregon statutory law, or violation of 15 U.S.C. § 1125(a)(1)(A); and (D) Plaintiff's claims are

barred by *Younger* Abstention doctrine. (R. Doc. 75).

The Court denied Plaintiff's motions for extensions of the deadlines to oppose the

Motions to Dismiss filed by Lee, Judge Tureau, the First Circuit, and the Clerk-Defendants. (R.

---

[6] As stated above, the Court is aware that Robicheaux has not made an appearance in this action and did not join this
motion. As discussed below, the Court has considered all claims against Robicheaux (which are identical to the
claims brought against the other Clerk-Defendants) as part of a frivolous review. Accordingly, the Court
characterizes this motion as brought by all Clerk-Defendants for ease of reference.

Docs. 81, 88).[7] Plaintiff nevertheless filed an untimely opposition. (R. Doc. 98). The Court does

not find good cause or excusable neglect for the purposes of deeming the opposition timely. *See*

Fed. R. Civ. P. 6(b)(1); LR 7(f). Nevertheless, the Court has considered all legal arguments

raised by Plaintiff in the untimely opposition.

 A brief review of Plaintiff's untimely opposition reveals that Plaintiff has used the filing

mostly to present personal attacks against the defendants (and this Court) through the use of

caustic profanities. For example, the opening paragraph of the filing states the following:

> The defendants' motions are fraudulent and must be denied. The fraudulent and
> malicious dribble of the lying nits and psychopaths – the criminal perpetrators and
> their ***wipes and ****suckers that "make a living" by blabbering incoherent
> nonsense, subject to Rule 11 sanctions and "defending" the foul criminals and
> their crimes – has no value as perverts every 'precedent' and every principle of
> jurisprudence. The foul scumbags and crooks fraudulently claim that they have
> some "absolute" or any other "immunity" which they do not have as in this RICO
> case the foul nits STOLE the funds and even if the nasty scumbags had any
> "immunity" from paying the damages to Plaintiff for committing the crimes
> against Plaintiff, they do not have "immunity" for keeping the money that the
> fetid despicable scumbags STOLE.

(R. Doc. 98 at 1). The majority of Plaintiff's "opposition" consists of similar personal attacks and

reiteration of her claims. (R. Doc. 98 at 1-9, 15-19). Plaintiff only appears to address the

following three substantive arguments for dismissal in her untimely opposition: (1) absolute

judicial immunity; (2) failure to state a claim under RICO; and (3) the *Younger* abstention

doctrine. (R. Doc. 98 at 1, 9-14). Even if Plaintiff's opposition was deemed timely, Plaintiff has

nevertheless waived all arguments not addressed in her opposition. *See JMCB, LLC v. Bs. Of*

*Com. & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2019) (finding that claims could be deemed

waived for failure to timely oppose); *JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831

F.3d 597, 601 (5th Cir. 2016).

---

[7] As stated above, Plaintiff has objected to these rulings pursuant to Rule 72(a) of the federal Rules of Civil
Procedure. (R. Docs. 85, 95). These objections remain pending with the district judge.

The defendants filed reply memoranda addressing the untimeliness of Plaintiff's opposition, Plaintiff's continued use of *ad hominem* attacks and profanity, and the few legal arguments raised by Plaintiff. (R. Docs. 100, 101).

## 2.     Insufficient Service of Process

A Rule 12(b)(5) motion seeks dismissal for failure to properly effectuate service. "A motion to dismiss pursuant to Rule 12(b)(5) turns on the legal sufficiency of the service of process." *Holly v. Metro. Transit Auth.*, 213 Fed. App'x 343, 344 (5th Cir. 2007). When a challenge is made to the adequacy of service of process, the serving party bears the burden of proving the validity of service or the existence of good cause for failing to effect service in a timely manner. *System Sign Supplies v. U.S. Dept. of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990); *Aetna Business Credit, Inc. v. Universal Décor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1990). The fact that the plaintiff is *pro se* does not excuse the failure to properly effect service of process. *System Signs Supplies*, 903 F.2d at 1013; *Dupre v. Touro Infirmary*, 235 F.3d 1340 (5th Cir. 2000).

Rule 4(m) requires a plaintiff to "properly serve defendant with a copy of the summons and complaint within 90 days after the complaint is filed." If a defendant is not timely served, the court "must dismiss the action" or order that "service be made within a specified time." Fed. R. Civ. P. 4(m). However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). Even in the absence of good cause, however, the district court has discretion "to order that service be made within a specified time" as an alternative to dismissal. Fed. R. Civ. P. 4(m); *see Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996) ("We agree with the majority of circuits that have found that the plain language of rule 4(m) broadens a district court's discretion by allowing it to extend the time for service even when a plaintiff fails to show good cause.").

To establish good cause, a litigant must demonstrate "at least as much as would be required to show excusable neglect." *Winters v. Teledyne Movible Offshore, Inc*., 776 F.2d 1304, 1306 (5th Cir. 1985). "Actions falling into the category of inadvertence, mistake or ignorance of counsel are not excusable neglect and do not establish good cause for extending" the service period. *Traina v. United States*, 911 F.2d 1155, 1157 (5th Cir. 1990). Additionally, the claimant must make a showing of good faith and establish "'some reasonable basis for noncompliance within the time specified.'" *Winters*, 776 F.2d at 1306 (quoting 4A C. Wright & A. Miller, Federal Practice & Procedure § 1165, at 480 (2d ed.)).

Here, several defendants – Conachen, Lee, Judge Tureau, and the First Circuit – seek dismissal for insufficient service of process. The record indicates that Plaintiff attempted service of process on these defendants by serving them personally through certified mail. (*See* R. Docs. 58-2, 66-2, 73-2, 86-1).

Plaintiff cannot serve process on a defendant because she is a party to this action. Rule 4(c) provides that "[a]ny person who is at least 18 years old and not a party may serve a summons and complaint." Fed. R. Civ. P. 4(c)(2). Accordingly, a "plaintiff—even one representing himself—cannot serve a summons and complaint." *Davis v. United States Dep't of the Treasury*, No. 18-1041, 2022 WL 1311482, at *3 n.24 (M.D. La. Feb. 28, 2022), *report and recommendation adopted*, 2022 WL 1311474 (M.D. La. Mar. 15, 2022) (citing Fed. R. Civ. P. 4(c)(2)). This rule extends to attempted service by a plaintiff by certified mail under state law. *Shabazz v. City of Houston*, 515 Fed. App'x 263 (5th Cir. 2013). For the foregoing reasons, the claims against the defendants are subject to dismissal without prejudice because service was not made in accordance with Rule 4(c).[8]

---

[8] Conachen, Lee, and Judge Tureau further argue that service was improper under Rule 4(e), which provides the manners for which service may be accomplished. The Louisiana First Circuit argues that service was improper against it under Rule 4(j), which provides the manners of serving foreign, state or local governments. Because the

Plaintiff has made no attempt to address the defendants' arguments that she has failed to serve process on them. Accordingly, the Court concludes that Plaintiff has failed to meet her burden of proving the validity of service on Lee, Judge Tureau, the First Circuit, and Conachen are subject to dismissal, without prejudice, for failure to serve process within the time allowed under Rule 4(m).

Similarly, Plaintiff's action against Robicheaux and Louisiana Supreme Court, which have not made appearances in this action, are subject to dismissal, without prejudice, under Rule 4(m) and Local Rule 41(b), for failure to prosecute, given that Plaintiff has taken no action with respect to these defendants since the transfer of this action. [9]

### 3.    Lack of Subject Matter Jurisdiction

A Rule 12(b)(1) motion to dismiss seeks dismissal of a complaint for lack of subject matter jurisdiction when a court lacks the statutory or constitutional power to hear the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The burden of proof on a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir. 1984). "A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6)." *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

---

record is clear that Plaintiff attempted service herself in violation of Rule 4(c)(2), the Court need not reach the issue of whether the manner of service was proper under Rule 4(e) or Rule 4(j). Furthermore, the Court has concluded below that the claims against all defendants are subject to dismissal, with prejudice, on the merits.

[9] Local Rule 41(b)(2) requires notice of 14 days prior to dismissal of an action for failure to prosecute. Regardless of whether Plaintiff takes any action with respect to Robicheaux and Louisiana Supreme Court within that timeframe, Plaintiff's claims against these defendants are subject to dismissal, with prejudice, for the reasons provided below.

While the defendants do not specify that they are seeking relief under Rule 12(b)(1), certain motions seek dismissal based on the *Younger* abstention doctrine and Eleventh Amendment Immunity. The Court will analyze these arguments under Rule 12(b)(1).

### a.    *Younger* **Abstention**

Federal courts must refrain from considering requests for injunctive or declaratory relief based upon constitutional challenges to certain ongoing state civil proceedings. *Younger v. Harris*, 401 U.S. 37 (1971); *Bauer v. Texas*, 341 F.3d 352, 356 (5th Cir. 2003). "Under the Younger abstention doctrine, federal courts should generally decline to exercise jurisdiction when: (1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." *Gates v. Strain*, 885 F.3d 874, 880 (5th Cir. 2018) (internal quotation marks and quoted sources omitted). The U.S. Supreme Court has stressed, however, that *Younger* abstention is only warranted where "exceptional circumstances" exist, as found in "three types of [state] proceedings": (1) state criminal prosecutions; (2) certain types of civil enforcement actions; and (3) proceedings that "touch on a state court's ability to perform its judicial function." *Sprint Comms., Inc. v. Jacobs*, 571 U.S. 69, 79 (2013); *see Texas Ent. Ass'n, Inc v. Hegar*, 10 F.4th 495, 508 (5th Cir. 2021).

It is unclear whether there remains an ongoing state judicial proceeding pertaining to Plaintiff's divorce. In arguing for the application of the *Younger* abstention doctrine, the defendants refer to appellate proceedings in the divorce action that commenced in the beginning of 2022. (*See*, *e.g.*, R. Doc. 58-1 at 15 n. 47). At any rate, the defendants do not establish that any "ongoing" divorce proceeding involves criminal prosecutions, is a civil enforcement action "akin

to a criminal prosecution" in "important respects," or otherwise touches upon the state court's ability to perform its judicial function. *See Jacobs*, 571 U.S. at 79 (citations omitted).

Accordingly, the the *Younger* abstention doctrine is inapplicable to this action.

### b.    Eleventh Amendment Immunity

The Eleventh Amendment bars a state from being sued in federal court by its own citizens, citizens of other states, or foreign nations. U.S. Const. Amend. XI; *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996); *Cox v. City of Dallas*, 256 F.3d 281, 307 (5th Cir. 2001) (citing *Bd. of Trs. Of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001)). "When a state agency is named the defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity." *Cozzo v. Tangipahoa Parish Council--President Government*, 279 F.3d 273, 281 (5th Cir. 2002). "This rule extends to 'arms of the state,' and to a state's 'officials acting in their official capacities.'" *Parker v. Louisiana Dep't of Pub. Safety & Corr.*, No. 18-1030, 2020 WL 4353564, at *8 (M.D. La. July 29, 2020) (citing *Howlett v. Rose*, 496 U.S. 356, 365, (1990); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.").

The State of Louisiana has not waived its immunity from suit in federal court. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)); La. R.S. § 13:5106(a). Under the *Ex Parte Young* doctrine, however, "a litigant may sue a state official in his official capacity if the suit seeks prospective relief to redress an ongoing violation of federal law." *Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729, 735-36 (5th Cir. 2020) (citing *Ex parte Young*, 209 U.S. 123 (1908)). This exception "rests on a legal fiction, the premise that a state official is not the State for sovereign-immunity

20

purposes when a federal court commands [him or her] to do nothing more than refrain from violating federal law." *Id.* at 168. (citations omitted). For a suit to proceed under this doctrine, it must be a suit seeking declaratory or injunctive relief and: "(1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law." *Id*. (citing *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015). This is true, even where an injunction may have "an ancillary effect on the state treasury." *Quern v. Jordan*, 440 U.S. 332, 337 (1979).

Plaintiff states that she is seeking recovery from the defendants only in their individual capacities. (Am. Compl. ¶ 4). Nevertheless, the First Circuit argues that it is entitled to Eleventh Amendment immunity. The Court agrees: Plaintiff's claims against the First Circuit, the Louisiana Supreme Court, and Judge Tureau (to the extent he is implicitly sued in his official capacity) are subject to dismissal based on Eleventh Amendment immunity. *See Price v. Irons*, No. 19-11451, 2020 WL 1638376, at \*3 (E.D. La. Apr. 2, 2020) ("A suit such . . . against a Louisiana state court judge in his or her official capacity is a suit against a state official and barred by the Eleventh Amendment.") (citing cases).

Having so concluded, it is appropriate to dismiss this action for lack of subject matter jurisdiction with respect to the First Circuit, the Louisiana Supreme Court, and Judge Tureau (to the extent he is implicitly sued in his official capacity).

### 4.    Failure to State a Claim and Frivolous Review

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).[10] In order to survive a Rule 12(b)(6)

---

[10] To the extent Plaintiff has made allegations of fraud, including as part of her RICO claims, they are subject to the heightened pleading standard set out in Rule 9 of the Federal Rules of Civil Procedure. *See Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138-39 (5th Cir. 1992). Rule 9 requires a plaintiff who "alleg[es] fraud" to "state

motion, a pleading's language, on its face, must demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In determining whether it is plausible that a pleader is entitled to relief, a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly*, 550 U.S. at 557. Factual assertions are presumed to be true, but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678. In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

In deciding a motion to dismiss, the Court may consider documents that are attached to the motion to dismiss as part of the pleadings if they refer to the Plaintiff's complaint and are central to his claim. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th. Cir. 2004).

Furthermore, the Court may perform a review to determine whether the complaint should be dismissed as frivolous or malicious to the extent any named defendant has not expressly sought dismissal of Plaintiff's claims. Plaintiff's payment of the filing fee does not preclude this review. *See Mallard v. United States District Court for the Southern District of Iowa*, 490 U.S. 296, 307-308 (1989) ("Statutory provisions may simply codify existing rights or powers. [28 U.S.C.] § 1915(d), for example, authorizes courts to dismiss a 'frivolous or malicious' action, but

---

with particularity the circumstances constituting fraud . . .," but allows "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally." Fed. R. Civ. P. 9(b). To meet this burden, a plaintiff must plead "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Tel-Phonic*, 975 F.2d at 1139.

there is little doubt they would have power to do so even in the absence of this statutory provision."); *see also Doe v. City of Baton Rouge*, No. 20-514, 2021 WL 304392, at *2 (M.D. La. Jan. 29, 2021) ("[R]egardless of whether Plaintiff were to pay the filing fee, this Court has the inherent power to screen a pleading for frivolousness."), *appeal dismissed*, No. 21-30061, 2022 WL 881753 (5th Cir. Mar. 24, 2022), *cert. denied sub nom. Doe v. City of Baton Rouge, Louisiana*, 143 S. Ct. 376 (2022).

### a.  Capacity to Be Sued

Under Rule 17(b), Louisiana law determines whether a party maintains capacity to be sued. Fed. R. Civ. P. 17(b)(3). Under Louisiana law, an entity must qualify as a juridical person to possess the capacity to be sued. La. C. C. Art. 24. The Louisiana Supreme Court has stated the following:

> The important determination with respect to the juridical status or legal capacity of an entity is not its creator, nor its size, shape, or label. Rather the determination that must be made in each particular case is whether the entity can appropriately be regarded as an additional and separate government unit for the particular purpose at issue. In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity.

*Roberts v. Sewerage & Water Bd. of New Orleans*, 634 So. 2d 341, 346-47 (La. 1994).

"Therefore, in the absence of law providing that an entity may sue or be sued, the entity lacks such capacity." *Dantzler v. Pope*, No. 08-3777, 2009 WL 959508, at *1 (E.D. La. Apr. 3, 2009) (citing *City Council of Lafayette v. Bowen,* 649 So.2d 611, 615 (La. Ct. App. 3d Cir. 1994)).

The Louisiana Constitution organizes Louisiana's government into three separate branches: legislative, executive, and judicial. *See* La. Const., Art. V. The Louisiana courts – including the Louisiana Supreme Court and the Courts of Appeals – are vested with the judicial power by the Louisiana Constitution. La. Const., Art V, §§ 1, 3, 8; *see Green v. Dist. Att'y Off.*,

No. 08-3685, 2009 WL 651132, at *5 (E.D. La. Mar. 10, 2009) (holding that the Orleans Parish Criminal District Court is not a separate entity capable of being sued, but is instead a part of the greater body of the Judicial Branch of Louisiana's state government). Plaintiff has not directed the Court to any law, statutory, constitutional, or otherwise, that confers upon the First Circuit or the Louisiana Supreme Court the authority to sue or be sued.

Federal courts have consistently held that Louisiana state and municipal courts are not juridical persons who have the capacity to sue or be sued. *See Hall v. Louisiana*, 974 F. Supp. 2d 957, 964 (M.D. La. 2013) (City Court of Baton Rouge does not have the capacity to sue or be sued); *Wells v. Welborn,* No. 11-32, 2011 WL 2222311, at *1 (M.D. La. June 8, 2011) (East Baton Rouge Family Court is not a juridical entity capable of being sued); *Rutherford v. Louisiana,* No. 10-1987, 2011 WL 692031, at *5 (E.D. La. Feb. 17, 2011) (Twenty-First Judicial District of the State of Louisiana is not a juridical person); *Ormond v. Louisiana*, No. 09-7202, 2009 WL 6419040, at *1 (E.D. La. Dec. 22, 2009) (Louisiana Fifth Circuit Court of Appeal is not a juridical person capable of being sued), *report and recommendation adopted*, 2010 WL 1837913 (E.D. La. May 5, 2010); *see also Chisom v. Edwards*, No. 86-4075, 2012 WL 13005340 (E.D. La. Aug. 6, 2012) (holding in the context of a motion to intervene, that the Louisiana Supreme Court is not a juridical person with the capacity to sue or be sued).

For these reasons, Plaintiff's claims against the First Circuit and the Louisiana Supreme Court are subject to dismissal with prejudice because those entities lack the capacity to be sued.

### b.    Absolute Immunity Defenses

### i.    Judicial Immunity

Judge Tureau is entitled to absolute judicial immunity for judicial acts performed within his jurisdiction. Absolute judicial immunity extends to claims arising from acts performed in the defendant's judicial role. *Brewer v. Blackwell*, 692 F.2d 387, 396 (5th Cir. 1982). The immunity

shields a judge unless he or she acts in the clear absence of jurisdiction over the subject matter or in a non-judicial capacity. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). This immunity applies however erroneous the act and however evil the motive. *Johnson v. Kegans*, 870 F.2d 992, 995 (5th Cir. 1989).

The United States Supreme Court has described the reasoning behind absolute judicial immunity as follows:

> [T]he nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have. . . . If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication. Nor are suits against judges the only available means through which litigants can protect themselves from the consequences of judicial error. Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability.

*Forrester v. White*, 484 U.S. 219, 226-27 (1988).

Here, Plaintiff's claims against Judge Tureau arise out of the exercise of his judicial functions within his jurisdiction, namely his adjudication of Plaintiff's divorce proceeding in the 23rd Judicial District Court. Plaintiff's allegations with respect to Judge Tureau concern judicial acts taken by Judge Tureau in connection with the underlying state court divorce proceeding. Plaintiff complains that Judge Tureau denied her the complete record on appeal, denied her request to have a trial on the merits, improperly granted a motion to deposit funds into the registry of the court, and was involved in having "manufactured" a bill of approximately $14,000 in fees for preparation of the appellate record. (*See* Am. Compl. ¶¶ 35, 36, 37, 40). Regardless of

whether these acts were correctly decided, they all constitute juridical acts to which Judge Tureau is entitled to absolute judicial immunity.[11]

The Court is aware that Plaintiff has made broad and conclusory conspiracy allegations involving Judge Tureau, employees of the 23rd Judicial District, and Louisiana appellate courts. But Plaintiff's hyperbolic accusations consist primarily of personal attacks and complaints about judicial decisions and the adjudicative process in general. At any rate, Plaintiff's allegations of a conspiracy involving judicial officers and court staff at all levels of the judicial process amount to complaints regarding the judicial process and the results of her divorce proceeding. Judge Tureau is entitled to absolute judicial immunity notwithstanding Plaintiff's claims of a conspiracy or procedural errors, given that there are no allegations to support a finding that Judge Tureau acted outside of the scope of his judicial duties or without jurisdiction. *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991); *McCoy v. Bogan*, No. 20-388, 2022 WL 4492781, at *8 (M.D. La. Sept. 9, 2022), *report and recommendation adopted*, 2022 WL 4490159 (M.D. La. Sept. 27, 2022).

For the foregoing reasons, Plaintiff's claims against Judge Tureau are subject to dismissal, with prejudice, in light of absolute judicial immunity. *See Kirkendall v. Grambling & Mounce, Inc.,* 4 F.3d 989 (5th Cir. 1993) (judicial and quasi-judicial immunity apply in a civil RICO action); *Turner v. Thomas*, No. 16-1001, 2016 WL 7638296, at *3 (W.D. La. Nov. 22, 2016), *report and recommendation adopted*, 2017 WL 53281 (W.D. La. Jan. 3, 2017) (any implicit Section 1983 claim against state judge was barred by absolute judicial immunity because the plaintiff's complaints about the judge all concerned actions taken by the judge directly in connection to a pending civil suit); *Spencer v. McNamara*, No. 10-1678, 2010 WL 3168435, at

---

[11] Any unnamed judicial officers of the First Circuit and Louisiana Supreme Court would also be entitled to absolute judicial immunity given that Plaintiffs' allegations involving the judges and justices of these appellate courts all concern decisions made in the course of the appellate process. (*See* Am. Compl. ¶¶ 26, 27, 37, 40, 41, 42, 43, 45, 47).

*1 (E.D. La. July 16, 2010), *report and recommendation adopted*, 2010 WL 3189974 (E.D. La. Aug. 10, 2010) (dismissing Section 1983 and RICO claims brought against federal judges on Section 1983 and RICO claims where "[d]espite the plethora of exclamation points and question marks in plaintiff's complaint, nothing in either the complaint or the motion reveals that any of the judges acted outside the scope of their judicial capacity."). This dismissal applies to Plaintiff's federal and state law claims. *See Price*, 2020 WL 1638377, at *5; *McCoy*, 2022 WL 4490159, at *8.

### ii.    Quasi-Judicial Immunity

As a derivative of absolute judicial immunity, "other necessary participants in the judicial process are entitled to absolute quasi-judicial immunity." *LaFrance v. New Orleans City*, No. 16-14439, 2017 WL 1050495, at *3 (E.D. La. Mar. 17, 2017) (quoting *Kirkendall v. Grambling & Mounce, Inc.*, 4 F.3d 989, 1993 WL 360732, at *3 (5th Cir. 1993) (citation omitted). This absolute quasi-judicial immunity "protects officials that perform *functions* comparable to those of judges. . . ." *Da Vinci Inv., Ltd. P'ship v. Parker*, 622 Fed. App'x 367, 373 (5th Cir. 2015) (quoting *Beck v. Tex. Bd. of Dental Exam'rs*, 204 F.3d 629 (5th Cir. 2000)). In determining whether an official is entitled to absolute quasi-judicial immunity, courts must take a "functional approach"—looking to "the nature of the function performed, not the identity or title of the actor who performed it." *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993).

Courts have often found that judicial employees such as clerks of court and law clerks "enjoy absolute quasi-judicial immunity when 'performing a ministerial function at the direction of the judge.'" *LaFrance*, 2017 WL 1050495, at *3 (quoting *Williams v. Wood*, 612 F.2d 982, 985 (5th Cir. 1980)). "In other words, judicial employees are absolutely immune when they act, whether 'in bad faith or with malice' pursuant to a court order or a judge's instructions because the employee is 'act[ing] as the arm of the judge and comes within his absolute immunity.'"

*LaFrance*, 2017 WL 1050495, at *3 (citing *Williams*, 612 F.2d at 985); *see Severin v. Parish of Jefferson*, 357 Fed. App'x 601, 605 (5th Cir. 2009) (granting absolute immunity to "employees of the Louisiana Fifth Circuit Court of Appeal who acted pursuant to the procedures allegedly implemented by the judges").

Having reviewed the record, the Court concludes that the Clerk-Defendants are entitled to absolute quasi-judicial immunity. Although court clerks enjoy a "narrower ambit of immunity than judges," they "have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction, and . . . qualified immunity from all other actions for damages." *Tarter v. Hury,* 646 F.2d 1010, 1013 (5th Cir. 1981). "Absolute immunity from damages actions applies . . . for clerks of court acting in a nonroutine manner under command of court decrees or under explicit instructions of a judge. Damages will not be awarded for a clerk's actions of this type even if in bad faith or with malice."*,* 612 F.2d at 985; *see also Rodriguez v. Weprin,* 116 F.3d 62, 66 (2d Cir. 1997) (extending judicial immunity to clerks of the court for tasks which are judicial in nature and an integral part of the judicial process or for administrative functions undertaken pursuant to explicit direction of a judicial officer or pursuant to established practice of the court); *Jenkins v. Clerk of Court,* 150 Fed. App'x 988, 990 (11th Cir. 2005) ("Nonjudicial officials have absolute immunity for their duties that are integrally related to the judicial process. Absolute quasi-judicial immunity for nonjudicial officials is determined by a functional analysis of their actions in relation to the judicial process.").

Plaintiff's broad and conclusory conspiracy allegations involving the Clerk-Defendants focus on two sets of facts: (1) allegations that the Clerk-Defendants failed to prepare a complete record, and (2) allegations that Plaintiff was billed, and funds were deposited, with respect to the costs for preparing the record. (Am. Compl. ¶¶ 33-35). To the extent the Clerk-Defendants did

not include Plaintiff's exhibits and transcripts in the record, or billed her for costs for preparing the record, the pleadings support a finding that those acts were conducted at the direction of Judge Tureau or another state judicial officer. Accordingly, the Clerk-Defendants are absolutely immune from suit based on the allegations in the Amended Complaint, and all of Plaintiff's claims brought against the Clerk-Defendants are subject to dismissal with prejudice. This dismissal applies to Plaintiff's federal and state law claims. *See Price*, 2020 WL 1638377, at *5; *McCoy*, 2022 WL 4490159, at *8.

The Court cannot extend absolute quasi-judicial immunity to Lee, however, even to the extent she performed her ministerial function of preparing transcripts for court hearings at the direction of Judge Tureau or another state judicial officer involved in the divorce proceedings. The U.S. Supreme Court has expressly held that court reporters are not entitled to absolute quasi-judicial immunity with respect to their duty "to record, as accurately as possible, what transpires in court." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993). Instead, "[o]fficial court reporters are entitled to qualified immunity under 42 U.S.C. § 1983 if they acted pursuant to their lawful authority and following in good faith the instructions or rules of the Court." *Woodall v. Texas*, 78 Fed. App'x 953, 954 (5th Cir. 2003). Accordingly, the Court will not extend absolute quasi-judicial immunity to Lee.

### c.     Failure to State a Claim

#### i.     42 U.S.C. § 1983 and 42 U.S.C. § 1985

Plaintiff purports to seek relief under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 for the alleged deprivation of her "clearly established constitutional rights on the basis of nationality, ethnic origin, and gender" as protected under the Equal Protection Clause of the Fourteenth Amendment and the Due Process Clause of the Fifth Amendment. (Am. Compl. ¶¶ 80-87).

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, custom, or usage . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and [federal] laws, shall be liable to the party injured." 42 U.S.C. § 1983. To state a claim under Section 1983, "a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Lauderdale v. Texas Dep't of Criminal Justice*, 512 F.3d 157, 165 (5th Cir. 2007) (internal quotation marks and citation omitted). "[A]llegations of callous indifference are sufficiently within the ambit of purposeful acts to state a claim of constitutional deprivation under § 1983." *Lopez v. Houston Indep. Sch. Dist.*, 817 F.2d 351, 355 (5th Cir. 1987) (overruled on other grounds).

The Fourteenth Amendment provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1.[12] To establish a denial of equal protection, a plaintiff must prove the existence of purposeful discrimination motivating the state action which caused the complained-of injury. *See Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997). Typically, a plaintiff must also show that the actions of the government official were motivated by improper considerations, such as sex, race, or religion. *See Bryan v. City of Madison Miss.*, 213 F.3d 267, 277 (5th Cir. 2000). "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999).

---

[12] Plaintiff cannot state a claim under the Fifth Amendment because none of the defendants are part of the federal government. *See* U.S. Const. amend V.

To make out a violation of Section 1985(3),[13] a plaintiff must establish four elements: (1) a conspiracy; (2) to deprive the plaintiff of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) a resulting injury. *United Broth. of Carpenters and Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983). At the core of a Section 1985(3) claim is the existence of a conspiracy based on "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993).

At most, Plaintiff has only provided "labels and conclusions" in support of her equal protection claim – whether brought under Section 1983 or Section 1985 – insufficient to withstand a Rule 12(b)(6) challenge. *See Iqbal*, 556 U.S. at 678. With respect to her Section 1983 claim, Plaintiff has not pled how any of the alleged acts or omissions by any of the defendants have violated her equal protection rights based on her nationality, ethnic origin, and gender. Accordingly, Plaintiff's "equal protection" claim brought under Section 1983 is subject to dismissal because there is "absolutely no mention or even suggestion that any of the alleged conduct was motivated by (or even perceived by Plaintiff as being motivated by) her sex, national origin, or social status." *See McCoy*, 2022 WL 4492781, at *15. Plaintiff's Section 1985 claim is similarly subject to dismissal for failure to state a claim because "[t]here is no mention of Plaintiff's race or any alleged conduct that would even remotely suggest racial animus" or class-based animus by the defendants. *See McCoy*, 2022 WL 4492781, at *15. Plaintiff's equal protection claims under federal law are subject to dismissal with prejudice on this basis alone.

In addition, Plaintiff has failed to state a claim under Section 1983 against the individual non-government defendants: Conachen, S. McCormick, L. McCormick, and J. McCoy. Plaintiff's spouse or ex-spouse, J. McCoy, was a private litigant in a divorce proceeding: there is

---

[13] In alleging a claim under 42 U.S.C. § 1985, Plaintiff only quotes Section 1985(3). (Am. Compl. ¶¶ 80-83).

no alleged basis for concluding that he was acting under color of state law. Further, attorneys such as Conachen and the McCormicks do not act under color of state law within the meaning of section 1983 in the course of representing their clients. *Beckom v. Thompson*, No. 19-148, 2020 WL 8676043, at *1 (E.D. Tex. Nov. 30, 2020), *report and recommendation adopted*, 2021 WL 781297 (E.D. Tex. Mar. 1, 2021). That said, an attorney or opposing party could be amendable to suit under Section 1983 if they acted as "a willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980); *Pete v. Metcalfe,* 8 F.3d 214 (5th Cir.1993). Here, Plaintiff has not alleged any non-conclusory facts supporting a finding that these non-government actors were willful participants in joint action with the State or its agents. *See Sheldon v. McLean*, No. 08-95, 2008 WL 3540385, at *2 (E.D. Tex. Aug. 11, 2008). In sum, the allegations in the Amended Complaint do not support a finding that any of these individual non-government defendants acted under color of state law within the meaning of Section 1983.

Moreover, the First Circuit, the Louisiana Supreme Court, and Judge Tureau (to the extent he is sued in his official capacity) are arms of the State of Louisiana. Accordingly, none of these defendants is a "person" under Section 1983. That is because the State of Louisiana is the real party in interest when state officials are sued in their official capacities. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Hafer v. Melo*, 502 U.S. 21, 26, (1991) (citing *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989)). Plaintiff's Section 1983 claims also fail against Judge Tureau and any unnamed judicial officers of the First Circuit and Louisiana Supreme Court because Section 1983 specifically precludes the granting of injunctive relief with respect to "any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

32

Finally, Lee and the Clerk-Defendants (to the extent they are not protected by absolute quasi-judicial immunity) are entitled to qualified immunity from Plaintiff's Section 1983 and 1985 claims.

Qualified immunity is a defense available to government officials in their individual capacities when sued under federal law. *Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994). Qualified immunity protects "government officials performing discretionary functions" from liability for civil damages so long as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citing *Procunier v. Navarette*, 434 U.S. 555, 565 (1978)). "When a defendant asserts the defense of qualified immunity and has established that the alleged actions were conducted pursuant to the exercise of his discretionary authority, the burden then shifts to the plaintiff to rebut this defense." *Mumpuku v. Neal*, No. 18-00785, 2019 WL 6465315, at *3 (E.D. Tex. Dec. 2, 2019) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)). Clerks of court may be entitled to qualified immunity when performing routine ministerial duties, such as entering orders and notifying parties. *Williams v. Wood*, 612 F.2d 982, 985 (5th Cir. 1980) (per curiam). "Official court reporters are entitled to qualified immunity . . . if they acted pursuant to their lawful authority and following in good faith the instructions or rules of the Court." *See Woodall v. Texas*, 78 F. App'x 953, 954 (5th Cir. 2003) (citing *Rheuark v. Shaw,* 628 F.2d 297, 305 (5th Cir. 1980)).

In order to defeat the defense of qualified immunity, "[t]he plaintiff must show '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" *Mayfield v. Currie*, 976 F.3d 482, 486 (5th Cir. 2020) (quoting *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013)). A district court has discretion to decide "which of the two prongs of the qualified immunity analysis should be

addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). But if a court first determines that the right was not clearly established at the time of the challenged conduct, "a court *should* forebear resolving" whether the official violated a statutory or constitutional right. *Brown v. Coulston*, 463 F. Supp. 3d 762, 774 (E.D. Tex. 2020) (quoting *Camreta v. Greene*, 563 U.S. 692, 705 (2011)) (emphasis in original).

The underlying "clearly established" constitutional right to which Plaintiff alleges she was deprived is "meaningful and effective access to courts." (Am. Compl. ¶¶ 2, 40). The right of access to the courts, in its "most obvious and formal manifestation . . . protects one's physical access" to the courts, such as the denial of the "right to file a lawsuit." *Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994) (citations omitted). The right of access to the court may also be "violated if an indigent litigant is denied a refund or waiver of filing fees." *Id*. Accordingly, the right of access to the courts is "implicated where the ability to file suit was delayed, or blocked altogether." *Id*. at 430. In *Foster*, "the Fifth Circuit emphasized that even egregious conduct potentially affecting the outcome of a case does not violate the right of access unless that conduct can be shown to have also affected the actual filing of the underlying lawsuit." *Doe v. Dantin*, No. 11-467, 2015 WL 3772133, at *3 (E.D. La. June 17, 2015); *see also Dupard v. Lopinto*, No. 19-1982, 2020 WL 1503619, at *17 (E.D. La. Mar. 30, 2020) "(As long as the plaintiff is able to file suit, the right of access is not abridged.").

Here, Plaintiff has not established that any of the alleged acts or omissions involving the Clerk-Defendants (*i.e.*, mailing judgment to an old address, requesting payment for filings and for preparation of the record, or the preparation of the record itself) violated her clearly established right to access to the courts with respect to her divorce proceeding. Accordingly, to the extent they are not entitled to absolute quasi-judicial immunity, the Clerk-Defendants are entitled to qualified immunity because Plaintiff has not alleged particular facts sufficient to show

that the Clerk-Defendants violated her clearly established rights. *Pacheco v. McKinney*, No. 18-858, 2018 WL 10761919, at *2 (W.D. Tex. Aug. 22, 2018).

Plaintiff has similarly not established that any of the alleged acts or omissions involving Lee (*i.e.*, manufacturing and falsifying transcripts) violated her clearly established right to access to the courts with respect to her divorce proceeding. Plaintiff does not allege what specific legal proceedings or hearings that Lee did not transcribe or otherwise intentionally falsified or altered by Lee, other than to suggest in conclusory fashion that information "favorable" to her case was not included in the transcripts and that certain exhibits were altered. (*See* Am. Compl. ¶¶ 33, 50). Given the foregoing, Lee is entitled to qualified immunity. *See Livingston v. Ward*, No. 20-00474, 2021 WL 3480007, at *5 (E.D. Tex. June 4, 2021) (court reporter was entitled to qualified immunity on Section 1983 claim that the court reporter failed to accurately transcribe the record for the plaintiff's underlying state criminal proceedings), *report and recommendation adopted*, 2021 WL 3471205 (E.D. Tex. Aug. 5, 2021); *Winegarner v. City of Coppell*, No. 05-1157, 2006 WL 2485847, at *9 (N.D. Tex. Aug. 28, 2006) (finding that the court reporter "is entitled to qualified immunity because [p]laintiff has not established that he was deprived of a constitutional right" based on alleged insertion of words by the court reporter into the trial transcript.), *aff'd*, 275 F. App'x 359 (5th Cir. 2008).

Based on the foregoing, Plaintiff's claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 are subject to dismissal for failure to state a claim.

### ii.      18 U.S.C. § 1962(b), (c), and (d)

Plaintiff alleges that the defendants were part of a criminal enterprise engaged in racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. Private individuals who are injured by criminal RICO activity can recover damages in a civil action. 18 U.S.C. § 1964(c). Plaintiff seeks to establish

civil liability upon the defendants for engaging in certain "prohibited activities" listed in Section 1962(b), (c), and (d). Each prohibited activity includes, as one necessary element, proof either of "a pattern of racketeering activity"[14] or of "collection of an unlawful debt." *See* 18 U.S.C. § 1962(b), (c), and (d). Accordingly, regardless of which subsections are relied upon, Plaintiff must establish these three elements: (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise. *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (quoting *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996)).

As stated above, RICO claims require the existence of an enterprise. An "enterprise" is defined to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Here, Plaintiff asserts that all defendants have formed an "association-in-fact enterprise" by agreeing "to form a criminal enterprise to advance fraud while disguising themselves behind the honorable principles of law and justice." (Am. Compl. ¶¶ 64-66). "[A]n association-in-fact enterprise includes 'a group of persons associated together for a common purpose of engaging in a course of conduct,' and that enterprise can be proved with 'evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.' *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015) (quoting *Boyle v. United States*, 556 U.S. 938, 944-945 (2009)). An association-in-fact enterprise features "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Plambeck*, 802 F.3d at

---

[14] "A pattern of racketeering activity requires two or more predicate acts and a demonstration that the racketeering predicates are related and amount to or pose a threat of continued criminal activity." *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000). Here the Plaintiff alleges violations of 18 U.S.C. § 201 (bribery of public officials and witnesses), 18 U.S.C. § 1341 (frauds and swindles), 18 U.S.C. § 1343 (wire fraud), and 18 U.S.C. § 1503 (obstruction of justice).

673-74 (citing *Boyle*, 556 U.S. at 946). The Fifth Circuit has determined that "an association-in-fact enterprise 1) must have an existence separate and apart from the pattern of racketeering, 2) must be an ongoing organization, and 3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure." *Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995)

Plaintiff has failed to plead the existence of an association-in-fact enterprise. Plaintiff alleges only conclusory facts supporting a finding that the defendants (who include her former attorney, her spouse or ex-spouse, her spouse or ex-spouse's attorneys, and the judges and judicial employees involved in her divorce proceeding) formed an ongoing organization functioning as a continuing unit over time. Plaintiff only asserts, in conclusory fashion, that she has established the requirements for an association-in-fact enterprise because "[a]ll there components are clearly present in the instant case – a tight 'community' of the exceptionally greedy, corrupt, and hostile to most 'foreigners' criminals, disguised as the 'law,' teamed-up for the purpose of stealing, defrauding, profiting, and scoring their political 'beliefs' and hatred." (Am. Compl. ¶ 66). Plaintiff describes this association-in-fact enterprise as consisting of all of the defendants, "[b]oth private actors and corrupt public officials that have been defrauding the public, stealing, and unjustly enriching – all while purporting to conduct an 'official court business.'" (Am. Compl. ¶ 66). At most, Plaintiff has alleged the existence of an "enterprise" by setting forth "labels and conclusions" insufficient to withstand a Rule 12(b)(6) challenge. *See Iqbal*, 556 U.S. at 678.

More particularly, Plaintiff has failed to allege an association-in-fact enterprise by specifically alleging facts supporting a finding that the alleged enterprise has (1) an existence separate and apart from the pattern of racketeering, (2) consists of an ongoing organization, and (3) has members that function as a continuing unit as shown by a hierarchical or consensual

decision-making structure. *See Crowe*, 43 F.3d 205. Plaintiff has failed to allege the existence of an association-in-fact enterprise "separate and apart" from the alleged pattern of racketeering, which Plaintiff alleges consists of certain acts of fraud and profiteering. As alleged, the sole purpose for which the defendants "teamed-up" was to commit the alleged predicate acts under the false auspices of conducting "official court business." (*See* Am. Compl. ¶ 66). Plaintiff does not allege any specific facts in support of a finding that these private and state actors formed an enterprise that existed "separate and apart from the pattern of racketeering." *See Crowe*, 43 F.3d at 205. Furthermore, Plaintiff has failed to allege facts supporting a finding that the defendants are members of an "ongoing organization" or "function as a continuing unit" as opposed to simply being "participants in the single state court lawsuit that forms the basis" of Plaintiff's Amended Complaint. *See Green v. Mallia*, No. 09-4159, 2010 WL 816786, at *4 (S.D. Tex. Mar. 4, 2010), *adhered to on reconsideration*, 2010 WL 1337736 (S.D. Tex. Mar. 29, 2010), and *aff'd*, 400 F. App'x 816 (5th Cir. 2010).

Having considered Plaintiff's allegations, the Court can only conclude that, at most, Plaintiff has alleged throughout her meandering pleading that each of the defendants had a role in certain alleged predicate acts, but not that there was a common purpose of these alleged predicate acts between the alleged members of the enterprise. *See McPeters v. Edwards*, 806 F. Supp. 2d 978, 987-90 (S.D. Tex. 2011), *aff'd*, 464 F. App'x 351 (5th Cir. 2012). Plaintiff has otherwise raised vague and conclusory allegations of a common purpose between the defendants to defraud Plaintiff and the public at large, all through the litigation of her divorce proceedings. Plaintiff's RICO claim (like her other claims) are best characterized as an improper collateral attack on a state judicial proceeding, and are subject to dismissal. *See Grudzinskas v. Homeside Lending, Inc.*, 345 F. Supp. 2d 633, 644 (S.D. Miss. 2004). Given that Plaintiff has not plausibly

alleged the existence of an "enterprise" to support liability under RICO, the Court need not address the remaining elements to establish a RICO claim.

For the foregoing reasons, Plaintiff's claims under 48 U.S.C. § 1962 brought against all defendants are subject to dismissal with prejudice.

### iii.    15 U.S.C. § 1125(a)(1)

Plaintiff also seeks relief under 15 U.S.C. § 1125(a)(1)(A), which provides a cause of action for trademark infringement under the Lanham Act. Section 1125(a)(1) states that "[a]ny person who . . . uses in commerce any word, term, name, symbol, or device, . . . which . . . is likely to cause confusion, or to cause mistake . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. § 1125(a)(1)(A). "To prevail on a trademark-infringement claim, a plaintiff must show (1) a protectable right in a mark, and (2) that the defendant's use of the marks creates a likelihood of confusion as to the mark's source, affiliation, or sponsorship." *See Paulsson Geophysical Services, Inc. v. Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008).

Plaintiff has failed to identify any specific trademark to which she is claiming infringement. Accordingly, Plaintiff's claims under 15 U.S.C. § 1125(a)(1) brought against all defendants are subject to dismissal with prejudice.

### iv.    Plaintiff's State Law Claims

Plaintiff's remaining state claims, to the extent not already dismissed, include (1) a claim for intentional and/or negligent infliction of emotional distress, and (2) alleged violations of Oregon criminal status pertaining to falsifying business records (ORS 165.080) and issuing a false financial statement (ORS 165.100). (*See* Am. Compl. ¶¶ 88-98).

A federal court exercising jurisdiction in diversity of citizenship cases applies as its rule of decision the law of the forum state. *See Boyett v. Redland Ins. Co.*, 741 F.3d 604, 607 (5th Cir. 2014) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 (1938)). "[F]ollowing a section 1406(a) transfer, regardless of which party requested the transfer or the purpose behind the transfer, the transferee court must apply the [substantive law] of the state in which it sits." *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 335 n.6 (5th Cir. 2020) (quoting *Ellis v. Great Sw. Corp.*, 646 F.2d 1099, 1110 (5th Cir. 1981).[15] Accordingly, the Court will apply substantive Louisiana law.

Plaintiff has advanced no argument in support of finding that the Oregon statutes referenced in the Amended Complaint (ORS 165.080 and ORS 165.100) apply in this action given the Section 1406(a) transfer to this district. Furthermore, given that the Oregon statutes relied upon fall within the Oregon criminal code, there is no basis before the Court for concluding that Plaintiff has a private right of action under ORS 165.080 or ORS 165.100. *See Barnett v. Ubimodo, Inc.*, No. 18-00418-MC, 2018 WL 3999697, at *2 (D. Or. Aug. 21, 2018) ("Neither the federal nor Oregon criminal code create a private right of action unless specifically authorized by statute; criminal claims generally cannot be a legal basis for jurisdiction in a civil suit."). These claims are subject to dismissal.

Plaintiff also alleges a claim for intentional or negligent infliction of emotional distress against all defendants: "By conspiring with corrupt public officials and running their dirty schemes of abuse that intended to deprive Plaintiff of her constitutional rights with no recourse available, and by committing their unlawful acts because of the Plaintiff's nationality, gender, and alienage, defendants have been intentionally and/or negligently inflicting emotional distress

---

[15] In contrast, where an action is transferred under 28 U.S.C. § 1404(a), the court must apply the substantive law of the "transferor" court to the action. *Ferens v. John Deere Co.*, 494 U.S. 516, 528 (1990).

on the Plaintiff." (Am. Compl. ¶ 90). The Court will briefly consider these claims under
Louisiana law.

"In order to recover for intentional infliction of emotional distress, a plaintiff must
establish, (1) extreme and outrageous conduct by defendant, (2) severe emotional distress
suffered by plaintiff, and (3) a desire by defendant to inflict severe emotional distress or
knowledge that severe emotional distress would be certain or substantially certain to result from
its conduct." *Kador v. City of New Roads*, No. 07-682, 2011 WL 1326641, at *10 (M.D. La. Apr.
5, 2011) (citing *White v. Monsanto Co.*, 585 So.2d 1205 (La. 1991)). The Louisiana Supreme
Court has set a high standard for such claims:

> The conduct must be so outrageous in character, and so extreme in degree, as to
> go beyond all possible bounds of decency, and to be regarded as atrocious and
> utterly intolerable in a civilized community. Liability does not extend to mere
> insults, indignities, threats, annoyances, petty oppressions, or other trivialities.
> Persons must necessarily be expected to be hardened to a certain amount of rough
> language, and to occasional acts that are definitely inconsiderate and unkind, The
> extreme and outrageous character of the conduct may arise from an abuse by the
> actor of a position, or a relation with the other, which gives him actual or apparent
> authority over the other, or power to affect his interest.

*Kador*, 2011 WL 1326641, at *10 (quoting *White*, 585 So.2d at 1209).

With respect to negligent infliction of emotional distress, the Louisiana Supreme Court
acknowledged the "general rule" that "if the defendant's conduct is merely negligent and causes
only mental disturbance, without accompanying physical injury, illness or other physical
consequences, the defendant is not liable for such emotional disturbance." *Moresi v. State
Through Dep't of Wildlife and Fisheries*, 567 So. 2d 1081, 1095 (La. 1990). Recovery for
negligent infliction of emotional distress has been limited to those cases involving the "especial
likelihood of genuine and serious mental distress, arising from special circumstances, which
serves as a guarantee that the claim is not spurious," such as the negligent transmission of a
message, especially one announcing death; the mishandling of corpses; failure to install,

41

maintain, or repair consumer products; negligent damage to one's property while the plaintiffs were present and saw their property damaged; and damages for fright or nervous shock, where the plaintiff was actually in great fear for his personal safety. *Id.* at 1096. "[I]f the defendant's conduct is merely negligent and causes only mental disturbance, without accompanying physical injury, illness or other physical consequences, the defendant is not liable for such emotional disturbance. *Id*., at 1095.

Here, Plaintiff has failed to state a claim intentional or negligent infliction of emotional distress under Louisiana law. Plaintiff does not allege facts that are so "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency" that would support a claim for intentional infliction of emotional distress. *See White*, 585 So.2d at 1209. Similarly, Plaintiff has not alleged any physical injury, illness, or other physicals consequences, or special circumstances, that would support a claim for negligent infliction of emotional distress. *See Moresi*, 567 So. 2d at 1095.

For the foregoing reasons, the Court concludes that Plaintiff's state law claims are subject to dismissal with prejudice.

### 5.    Futility of Amendment

In most circumstances, a court should allow a plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (plaintiffs are generally given one chance to amend before dismissal unless "it is clear that the defects are incurable"). However, a court should deny leave to submit futile amendments that are "insufficient to state a claim." *Jamieson v Shaw*, 772 F.2d 1205, 1209 (5th Cir. 1985).

"It is within the district court's discretion to deny a motion to amend if it is futile." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000) (citations omitted). The

"futility" of amendments to a complaint is measured by whether "the amended complaint would fail to state a claim upon which relief could be granted" under "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id*. at 873 (citations omitted).

Plaintiff has already amended the claims in the original complaint. Despite this amendment, Plaintiff's meandering allegations in the Amended Complaint remain frivolous and subject to dismissal. Plaintiff appears to simply seek to malign the names of judicial officers, court employees, and attorneys involved in her divorce proceedings and to collaterally attack the results of those proceedings. Given that Plaintiff has presented the Court with no basis for recovery, and any further amendment appears to be futile, it is appropriate to deny Plaintiff an additional opportunity to amend the pleadings. *See Price*, 2020 WL 1638376, at *5 ("Plaintiff's allegations here involve dissatisfaction with the merits of the decisions a state judge made in his capacity as a judge. Plaintiff's rambling, incoherent, and conclusory allegations raise no plausible federal claims. He has presented the Court with no basis for issuing a declaration or injunction. Therefore, any amendment would be futile. The Court thus denies plaintiff leave to amend his complaint.").

## III.    Conclusion

Based on the foregoing,

**IT IS RECOMMENDED** that this matter **be dismissed in its entirety** as follows:

**IT IS RECOMMENDED** that Plaintiff's Motion for Declaratory Relief and Preliminary Injunction (R. Doc. 42) be **DENIED**. *See* Section II(B).

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion for Entry of Default against Scott McCormick, Lorraine McCormick, and Joseph McCoy (R. Doc. 94) be **DENIED.** *See* Section II(C).

**IT IS FURTHER RECOMMENDED** that David Conachen's Motion to Set Aside Entry of Default (R. Doc. 91) and Motion for Extension of Time to File Responsive Pleadings (R. Doc. 92) be **GRANTED.** *See* Section II(D).

**IT IS FURTHER RECOMMENDED** that David Conachen's Motion to Dismiss for Insufficient Service of Process (R. Doc. 99) be **GRANTED,** and that Plaintiff's claims in the Amended Complaint against David Conachen be **DISMISSED WITH PREJUDICE** for insufficient service of process and failure to state a claim. *See* Section II(E)(2); II(E)(4)(c).

**IT IS FURTHER RECOMMENDED** that Judge Steven Tureau's Motion to Dismiss (R. Doc. 66) be **GRANTED**, and that Plaintiff's claims in the Amended Complaint against Judge Tureau be **DISMISSED** for insufficient service of process and **DISMISSED WITH PREJUDICE** for Eleventh Amendment immunity (to the extent he is sued in his official capacity), absolute judicial immunity, and failure to state a claim. *See* Sections II(E)(2), II(E)(3)(b), II(E)(4)(b)(i), II(E)(4)(c).

**IT IS FURTHER RECOMMENDED** that the Louisiana First Circuit Court of Appeal's Motion to Dismiss (R. Doc. 73) be **GRANTED**, and that Plaintiff's claims in the Amended Complaint against the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court be **DISMISSED** for insufficient service of process and failure to prosecute (with respect to the Louisiana Supreme Court) and **DISMISSED WITH PREJUDICE** for Eleventh Amendment immunity, lack of capacity to be sued, absolute judicial immunity, and failure to state a claim. *See* Sections II(E)(2), II(E)(3)(b), II(E)(4)(a), II(E)(4)(b)(i), II(E)(4)(c).

**IT IS FURTHER RECOMMENDED** that Bridget Hanna, Jill Lambert, and June Julien's Motion to Dismiss (R. Doc. 75) be **GRANTED**, and that Plaintiff's claims in the Amended Complaint against Bridget Hanna, Jill Lambert, June Julien, and Michele Robicheaux be **DISMISSED** for failure to prosecute with respect to Michele Robicheaux and **DISMISSED**

**WITH PREJUDICE** for absolute quasi-judicial immunity, qualified immunity, and failure to state a claim. *See* Sections II(E)(2), II(E)(4)(b)(ii), II(E)(4)(c).

 **IT IS FURTHER RECOMMENDED** that Gina Lee's Motion to Dismiss (R. Doc. 58) be **GRANTED**, and that Plaintiff's claims in the Amended Complaint against Gina Lee be **DISMISSED** for insufficient service of process and **DISMISSED WITH PREJUDICE** for qualified immunity and failure to state a claim. *See* Sections II(E)(2); II(E)(4)(c).

 **IT IS FURTHER RECOMMENDED** that Plaintiff's claims in the Amended Complaint against Scott McCormick, Lorraine McCormick, and Joseph McCoy be **DISMISSED WITH PREJUDICE** for failure to state a claim. *See* Section II(E)(4)(c).

 Signed in Baton Rouge, Louisiana, on February 15, 2023.

        **RICHARD L. BOURGEOIS, JR.**
        **UNITED STATES MAGISTRATE JUDGE**